UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DONALD STEVEN YAAG,<br><br>                    Petitioner,<br>     v.<br>ROBERT LeGRAND, et al.,<br><br>                    Respondents. | Case No. 3:14-cv-00295-MMD-WGC<br><br>ORDER |

This *pro se* habeas matter comes before the Court on petitioner's motion styled as a motion to compel (ECF no. 27), which the Court construes as a motion for discovery pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases (the "Habeas Rules"). Petitioner seeks discovery of materials reflecting that he was incarcerated in California at the time of at least one, and possibly more, of the Nevada offenses for which he stands convicted. Attorneys for the State asserted during, *inter alia*, state post-conviction proceedings that they were in possession of materials reflecting his dates of incarceration in California.

**I.      BACKGROUND**

Petitioner Donald Yaag challenges his 2009 Nevada state conviction, pursuant to a jury verdict, of nine counts of sexual assault of a minor under the age of fourteen. Petitioner was sentenced to nine concurrent sentences of life without the possibility of parole.

Petitioner was charged with having committed these offenses against C.A. The evidence at trial reflected that Yaag had dated C.A.'s mother at one time or another, and Yaag had remained in contact with C.A.'s family even at times when he and her

mother were not dating. Yaag was regarded as a stepfather by C.A., who had had no involvement with her natural father.[1]

The amended information under which petitioner was tried charged him with a total of 21 counts, consisting of 14 counts of sexual assault of a minor under the age of fourteen and 7 counts of lewdness with a child under the age of fourteen. The State pursued a number of the lewdness charges only in the alternative to a sexual assault charge from the same alleged incident. The State further conceded in its closing that C.A.'s trial testimony had not supported certain counts alleging specific activity.[2]

None of the counts were alleged separately to have occurred on a specified date or within a range of dates. Instead, the opening paragraph alleged that the 21 offenses occurred over a three-year period from "on or between January 1, 2004, and December 31, 2006."[3]

In the trial evidence, however, specific counts nonetheless corresponded to four discrete time periods where Yaag allegedly was visiting from California and staying at a

///

---

[1] *E.g.*, ECF No. 13 (Exh. 14 at transcript pages 37-38, 40-42 & 70 (see note below)).

Respondents filed selected state court record exhibits at ECF No. 13 along with a copy of an index of exhibits. The Court hereafter will cite simply to the relevant exhibit number. Further, page citations, unless otherwise noted, are to the electronic docket page number in the header at the top of the page rather than to any internal page numbering within the original document. The trial transcripts, however, are filed as multi-part attachments, and it does not appear likely that the transcript copies in the *pro se* petitioner's possession include CM/ECF headers with electronic page numbering. The Court therefore uses the original internal page numbers when citing to the trial transcripts.

The Court makes no factual findings as to the veracity of any assertion of fact by any witness, party or counsel at any point in the state proceedings. The Court merely refers to evidence and possible inferences that are pertinent to gauging the potential relevance and materiality of the discovery sought. Thus, no factual statement herein constitutes a factual finding by this Court.

The current background summary does not purport to be a complete recital of all trial evidence and potentially relevant state court record materials. The present summary instead merely provides background to the issues presented on the motion for discovery.

[2] *See* Exh. 15 at 160-62 & 175-76.

[3] Exh. 10.

particular location in Las Vegas.[4] The Court will refer to these discrete episodes — in the temporal order in which they allegedly occurred — as: (1) the "Wild Wild West — Scandia" incidents; (2) the "Wild Wild West — Star Trek Experience" incidents; (3) the "Adolfo's Home" incidents; and (4) the "Mother's Home" incident.

Counts 1 through 5 corresponded to the Wild Wild West — Scandia incidents, with Yaag being convicted of Count 4.[5]

Counts 6 through 10 corresponded to the Wild Wild West — Star Trek Experience incidents, with Yaag being convicted of Counts 7, 8 and 9.[6]

Counts 11 through 15 and 17 through 21 corresponded to the Adolfo's Home incidents, with Yaag being convicted of Counts 11, 15, 18 and 19.[7]

Count 16, of which Yaag was convicted, corresponded to the Mother's Home incident.[8]

The State sought to establish at trial that the foregoing charged offenses occurred over a span of time during which C.A. was 11 to 13 years old. The currently available record reflects that C.A. was born on February 19, 1993. She thus would have been 11 years old from February 19, 2004, through February 18, 2005.[9]

---

[4] Exh. 14 at 71 & 147.

[5] Exh. 14 at 41-50 & 66-67 & 71 (C.A. trial testimony); Exh. 15 at 166-68 (closing argument); Exh. 20 (judgment of conviction). The prosecutor was not entirely clear and consistent in her closing regarding which specific counts corresponded to which incidents. The breakdown in the text accordingly is based in the final analysis on how C.A.'s testimony lined up with the counts, with the prosecutor's closing serving only as an initial guide.

[6] Exh. 14 at 71-83; Exh. 15 at 168-69; Exh. 20. Part of the episode also was referred to at trial by reference to the In-N-Out Burger location that is at the same intersection as the Wild Wild West Casino. The State conceded that C.A.'s trial testimony did not support Count 6. Exh. 15 at 161. Count 10 was pursued in the alternative to Count 9. *Id.*

[7] Exh. 14 at 84-93; Exh. 15 at 170-72; Exh. 20. The State conceded that C.A.'s trial testimony did not support Counts 12, 13, 17 and 20. Exh. 15 at 162. The State pursued Count 21 in the alternative to Count 19. *Id.*

[8] Exh. 15 at 172; Exh. 20. The incident also was referred to at trial by reference to the "Wedding Crashers" movie that they were watching and/or by C.A.'s birthday. C.A. also would refer to the incident by the street where her mother's home was located, Sandrone.

[9] *See, e.g.,* Exh. 14 at 24, 28 & 30-31. In compliance with LR IC 6-1, counsel sought to excise C.A.'s date of birth where it appears in the transcript. Counsel missed
*(fn. cont…)*

3

As discussed further, *infra*, that span of time is potentially material to issues presented in this case. Petitioner is trying to obtain reliable evidence that he can use to establish that he was incarcerated in California allegedly from approximately December 20, 2002, until July 23, 2005. If that in fact were established to be true, he thus would not have been in Nevada during the time of any alleged offenses of which he was convicted that allegedly occurred while C.A. was 11. In such a situation, he also could not have been in Nevada until more than half of the three-year span of time alleged in the amended information had elapsed.

At trial, C.A. testified that the Wild Wild West — Scandia incidents — in regard to which Yaag was convicted on Count 4 — occurred when she was 11 years old, but she did not recall the month or time of year.[10]

C.A. did not testify to any specifics reflecting when the Wild Wild West — Star Trek Experience incidents occurred, in regard to which Yaag was convicted on Counts 7, 8 and 9.[11]

C.A. testified that she was 12 years old when the Adolfo's Home incidents occurred and that they occurred in "around, I believe, October."[12] These incidents accordingly would have allegedly occurred in or around October 2005.

C.A. testified that the Mother's Home incident occurred when Yaag was visiting for both her birthday and her brother's birthday when she was still 12 but about to become 13 years old.[13] This incident accordingly would have allegedly occurred on or before February 18, 2006.

---

*(…fn. cont.)*
iterations on pages 30 and 116 of the transcript, however. C.A.'s date of birth as reflecting her age during a specific period is material to the discussion herein. Given that the date of birth is not referenced herein in conjunction with other personal identifiers, it does not appear that filing the present order under seal is warranted or necessary.

[10]Exh. 14, at 41-43 & 129-30; but see *id.* at 153 ("11 or 12" in prior statements).
[11]*See* Exh. 14 at 71-83.
[12]Exh. 14 at 84, 89 & 164-65.
[13]Exh. 14 at 93 & 116-17.

4

Prior to trial, defense counsel, the prosecution, and the trial court all were aware that Yaag had been incarcerated during the overall time that he knew C.A. and her mother. Yaag had known them for approximately a decade prior to the charged incidents. His California incarceration was the reason given — outside the presence of the jury — for the multi-year gap between alleged prior instances of sexual abuse of C.A. by Yaag occurring in California when she was much younger and the later Nevada alleged incidents.[14]

It appears from the limited record materials currently on file in this action that Yaag was incarcerated in California during that time — whenever it specifically was — on a California conviction for a lewd act upon a child and force of a lewd act upon a child. Yaag acknowledged that his natural daughter was a victim of the California offenses.[15]

At the November 8, 2012, state post-conviction evidentiary hearing, defense counsel testified based upon an incomplete and not necessarily infallible recollection of

///

---

[14]*E.g.*, Exh. 13 at 16, 33-34, 40 & 58-60 (including C.A's pretrial hearing testimony).

[15]*See, e.g.,* Exh. 19 at 3-5 (sentencing transcript). The citation covers the following notes as well.

The Court assumes for the current discussion that a conviction for basically the same type of offense against a similarly situated victim has no immediate bearing on whether Yaag can establish actual factual innocence of one or more of the offenses charged in this case in an effort to overcome the untimeliness and/or procedural default of certain claims in this case.

For accuracy of the recital, the Court notes that the State maintained at sentencing that there had been three child victims of the California offenses. Yaag stated in response that his daughter had been the only victim. The current issues do not turn on this point.

The prior California conviction formed the basis for the mandatory life sentences without parole imposed on the Nevada convictions. Earlier charging instruments in the case referred to the California conviction as being dated January 28, 2004. *E.g.*, No. 5 (the information later was amended to remove the reference because the information was to be before the jury). The State asserted at sentencing that Yaag was sentenced to 36 months for the offenses, but it is not clear when time-served sentencing credit on the sentences might have begun in relation to that alleged date of conviction. *See also* Exh. 13 at 60 (perhaps suggesting that time-served credit may have started running earlier).

the events and circumstances from nearly four years earlier at the trial.[16] As best as counsel could recall, there was some overlap between the period of incarceration and the period of time charged in the amended information. He recalled pursuing motions *in limine* seeking, *inter alia*, to narrow the time range in the charging instrument to exclude a time period when Yaag was imprisoned and further to prevent references to the prior conviction at trial. He further recalled facing difficulties in cross-examining the victim about time periods where Yaag instead may have been in prison without in some manner opening the door to possible admission of evidence of the prior conviction.[17]

Also at the state post-conviction evidentiary hearing, Yaag testified, *inter alia*, that he was incarcerated from December 19, 2002, to July 25, 2005.[18]

Counsel for the State — who had been one of the prosecutors at Yaag's trial — objected during Yaag's testimony maintaining that he had been incarcerated from 2002 to 2005. She stated: "I can bring records that show when he was incarcerated, but that is not correct, the records that the State has." The record on file in this federal court action does not reflect, however, that counsel thereafter sought to present records showing Yaag's actual specific dates of incarceration prior to a ruling on the state petition.[19]

---

[16]*E.g.,* Exh. 41 at 4-7. Page citations are to the original transcript page numbers for this multi-part filing.

[17]Exh. 41 at 7-8, 11, 22-24 & 41-43.

The state court record materials currently on file corroborate counsel's recollection in part and reflect the filing of three motions *in limine*. *See* Exh. 22 at 7. Respondents have filed a copy of one motion *in limine* on an unrelated point and the State's response to a different but potentially pertinent motion in limine. The Court will direct respondents to supplement the exhibits with the two pertinent motions in *limine* and all briefing thereon.

As noted in the text, defense counsel's recollection had faded in the intervening years. The Court expresses no opinion as to whether the defense actually would have been prevented from introducing evidence of the fact of Yaag's incarceration — if in truth relevant to whether he could have been in Nevada for a particular offense or offenses — without opening the door to introduction of otherwise inadmissible evidence also as to the reason for his incarceration. (Petitioner did not testify at trial, and the fact of the prior conviction therefore was not admissible as impeachment evidence.)

[18]Exh. 41 at 66-67.

[19]*See* Exh. 41 at 67 & 83-87.

At the conclusion of the arguments at the post-conviction hearing, the presiding judge — who also had presided at Yaag's trial — stated:

> THE COURT: So, and – I mean, this is something that I'm sure we knew at trial and should not be controverted now, which is the charges that he was charged with and convicted of did not take place while he was in prison. Forget the jury, I would have dismissed the charges if that were the case. I mean – . . . – that's just not the case. Maybe – I mean, it certainly came up because some of the testimony came up about a course of conduct. . . . . And maybe some of the testimony about the course of conduct encompassed some of the – potentially encompass[ed] some of the time in prison, so think that's where the issue is worth talking about and I understand it. But I want to be clear that the charges he was convicted of, those incidents were not while he was in prison. I mean, that certainly would have been an important issue for the Court if that were the case.

Exh. 41 at 87.[20]

In this federal habeas action, respondents have moved to dismiss, *inter alia*, Ground 1 as procedurally defaulted and Grounds 2(C), 2(D), 3, 4, and part of 2(F) as untimely due to a failure to relate back to timely claims.

Petitioner responded initially with the present motion. He seeks discovery of any records that respondents may have pertaining to the duration of his California incarceration. He seeks the materials to, *inter alia*, make a showing in response to respondents' procedural defenses that a failure to consider the claims would result in a fundamental miscarriage of justice because he allegedly could not have committed offenses of which he was convicted because he was incarcerated in California at the relevant time.

In his subsequent opposition to respondents' motion to dismiss, petitioner also maintained that a failure to review any procedurally barred claims would result in a fundamental miscarriage of justice because he is actually innocent of any charged offenses that allegedly occurred in 2004 due to his alleged incarceration in California at

///

---

[20]The Court expresses no opinion at this juncture as to whether the state district court's assertions would be subject to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Petitioner would have an opportunity to overcome any such presumption by presenting clear and convincing evidence to the contrary. The current issue, in part, is whether discovery is warranted to allow the petitioner an adequate opportunity to do so.

that time. Petitioner referred to this pending motion seeking to obtain evidence in the State's possession of the dates of his incarceration.

Petitioner thereafter filed a motion for leave to file a supplement to the petition, which was presented with extensive attachments.[21]

Materials attached with the motion purport to reflect extended efforts by petitioner to obtain records establishing his dates of incarceration directly from California authorities, with numerous different types of requests being denied.[22]

Petitioner further included argument in the papers attached with the motion seeking to identify, *inter alia*, the specific testimony by C.A. that he maintains was contradicted by his alleged dates of California incarceration.

Petitioner also attached an exhibit identified as "Exhibit 1(a)" with the motion for leave. The exhibit purports to be documentation obtained by petitioner in March 2016 from the Departmental Archives Unit of the California Department of Corrections and Rehabilitation. The enclosure included with the exhibit is identified as "the CDCR 112 Chronological History, Parole Violations and Summary of Revocation Hearing and Decision documents for both [Yaag] CDCR Numbers," which the Court refers to herein as the "CDCR Chronological History."[23]

The CDCR Chronological History includes handwritten and/or typewritten entries that are potentially pertinent to Yaag's claim of actual innocence, from among entries in the document covering a broader overall period of time.

The following entries are referenced as being under CDCR No. P-01796 for Donald Yaag:

///

---

[21]The Court is holding the motion under advisement, and it expresses no opinion as to whether the motion properly presents a request for amendment and/or supplementation of the pleadings. The Court's focus at present is upon what the materials attached with the motion appear to reflect what is pertinent to the present motion for discovery.

[22]*See* ECF No. 32 at 64-81 & 153.

[23]ECF No. 32 at 5-10.

|   |   |   |
|---|---|---|
|   | . . . |   |
|   | 10-4-01 | Ret to Parole – Reg. IV – Victorville Unit II[24] |
|   | . . . |   |
|   | 10-23-02 | RETAIN ON PAROLE PER [illegible initial] |
|   | 12-19-02 | Hold Placed |
|   | 12-20-02 | Received RCC/CIM PENDREV |
|   | . . . |   |
|   | 12-6-03 | discharge per stat max |

ECF No. 32 at 7-8.

The following entries are referenced as being under CDCR No. V-24483 for Yaag:

|   |   |   |   |
|---|---|---|---|
|   | 02-13-04 | received | WASCO STATE PRISON-RC   NC |
|   | . . . |   |   |
|   | 7-23-05 | Paroled to <u>Region</u> IV <u>Unit</u> Victorville 3 |   |
|   | . . . |   |   |

ECF No. 32 at 9.

Petitioner maintains that the CDCR Chronological History establishes that he was incarcerated continuously from December 20, 2002, to July 23, 2005.[25]

///

---

[24] Compare to a more clear combined typewritten and handwritten entry for 12/6/99: RELEASED ON PAROLE, REGION IV, DISTRICT: Victorville, COUNTY: San Bernardino.

[25] The Court expresses no opinion at this juncture as to what the cursory entries on the unauthenticated document in fact establish. The entries potentially might be read as reflecting a return to incarceration from parole on December 20, 2002; the expiration of one sentence on December 6, 2003; incarceration on a second sentence thereafter; and a release on parole on July 23, 2005. It perhaps may be necessary at some point for an official with knowledge of the type of record to execute an affidavit or declaration establishing (as to this and perhaps related materials) both authenticity as well as the significance of the content in full context. At this point, however, it is significant that the entries on the exhibit presented are not necessarily inconsistent with Yaag's claim that he was incarcerated in California during a time period when C.A. testified that he committed sexual offenses in 2004. (C.A.'s eleventh birthday was on February 19, 2004, after the February 13, 2004, entry on the document referring to Wasco State Prison.)

Petitioner additionally has filed a renewed motion for appointment of counsel along with another motion and sundry other filings claiming actual innocence on the same basis.

## II.   GOVERNING LAW

Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule. 520 U.S. at 904 & 909. In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner *may*, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300 (emphasis added). In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner's claim of judicial bias in his particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Supreme Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery. 520 U.S. at 908 & 909.

The Ninth Circuit, consistent with *Bracy* and *Harris*, accordingly has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim. *See, e.g., Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997). *See also Osborne v. District Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008), *reversed on other grounds*, *District Attorney's Office v. Osborne*, 557 U.S. 52 (2009)(in discussing its precedent in *Jones* as to habeas discovery, the Ninth Circuit reinforced the point that a court should allow discovery that, as emphasized by the Court of Appeals, only *"may* establish" a factual basis for the petitioner's claim).

With regard to affirmative defenses raised herein, a petitioner who cannot overcome a procedural bar on other grounds still may obtain review of untimely or procedurally defaulted claims if he can demonstrate that the failure to consider the claims would result in a fundamental miscarriage of justice. *E.g., McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013) (federal limitation period); *Schlup v. Delo*, 513 U.S. 298 (1995) (procedural default).

In noncapital cases, this exception has been recognized only for petitioners who can demonstrate actual innocence. *E.g., Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997). In order to satisfy this actual innocence gateway, a petitioner must come forward with new reliable evidence that was not presented at the trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *See, e.g., Schlup*, 513 U.S. at 324-27.

This exacting standard permits review only in the "extraordinary case," but it does not require absolute certainty about the petitioner's guilt or innocence." *E.g., Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (*en banc*). If the evidence presented on post-conviction review casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims. *Id.*

The evidence need not be newly discovered, but it must be "newly presented." *See Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). The federal habeas court considers all the evidence, old and new, incriminating and exculpatory, whether admissible at trial or not. *Lee*, 653 F.3d at 938. Newly presented evidence may call into question the credibility of trial witnesses, potentially requiring credibility assessments on federal habeas review. *Schlup*, 513 U.S. at 330, *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). On a complete record, the court makes a probabilistic determination about what reasonable, properly instructed jurors would do. *Lee*, 653 F.3d at 938.

///

In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

## III.   DISCUSSION

Petitioner has established good cause under Rule 6(a) for the discovery sought. The material sought is potentially relevant to petitioner's effort to show actual innocence under *Schlup* at the very least as to Count 4.[26] The material further is potentially relevant to petitioner's argument under *Schlup* seeking to undermine the credibility of the complaining witness' testimony supporting the remaining counts. Moreover, the State affirmatively represented to the state district court at the 2012 state post-conviction hearing that it "can bring records that show when he was incarcerated."The record before the Court therefore tends to establish both that petitioner may be able to overcome the procedural bars raised with the discovery sought and further that the State possesses the material sought.

Respondents maintain that petitioner "fails to allege what records are in the possession of [the District Attorney's] office, what the records purport to state and what facts in those records support the allegations in his petition for federal habeas relief."[27]

The original *pro se* motion sufficiently identified, however, what petitioner was seeking and why. Petitioner additionally has provided further detail relevant to the request in subsequent filings.

Respondents further contend that evidence reflecting the dates of petitioner's California incarceration is not "new" for purposes of *Schlup* because "it is clear that this

///

///

---

[26]The Ninth Circuit has rejected use of the concurrent sentence doctrine as a discretionary basis for declining review of criminal convictions. See *United States v. DeBright*, 730 F.2d 1255 (9th Cir. 1984) (*en banc*). Thus, even if petitioner's argument ultimately perhaps would allow him to challenge his conviction on otherwise barred claims as to only one of his nine concurrent sentences of life without parole, review of the claims would not be declined on that basis.

[26a]*See* Exh. 41 at 67.

[27]ECF No. 29 at 2.

evidence was available at the time of trial."[28] However, as noted previously, for evidence to be "new" for purposes of *Schlup* it need be only "newly presented" as opposed to "newly discovered" and thus previously unavailable. *Griffin*, 350 F.3d at 961-63. The key inquiry is not "whether the new evidence was *available to the defendant* during his trial, but rather [is] . . . whether the new evidence was *introduced to the jury* at trial." 350 F.3d at 963 (emphasis in original). Accordingly, evidence that was excluded by the trial court or that was not presented by the defense at a jury trial can qualify as new evidence for purposes of *Schlup*. *Id.* In the present case, it appears that evidence of the dates of incarceration specifically was excluded from evidence rather than presented to the jury at petitioner's trial.[29] The evidence therefore would appear on the record currently before this Court to be "new" for purposes of *Schlup*.

Respondents also urge that "[a]fter the passage of AEDPA, discovery and evidentiary hearings have been severely limited," citing to *Cullen v. Pinholster*, 131 S.Ct. 1388, 1401 (2011) and 28 U.S.C. § 2254(e).[30]

The holding in *Pinholster*, however, precludes consideration of evidence received for the first time in federal court only when the court is actually conducting review of a state court decision on the merits under § 2254(d). *Pinholster* does not preclude consideration of such evidence when presented by the petitioner in an effort to overcome a procedural bar in federal court. First, presentation of evidence for that purpose does not constitute presentation of evidence on the merits of a claim adjudicated on the merits in the state courts. *See, e.g., Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) (*en banc*) (presentation of evidence to overcome a procedural default by establishing cause based on inadequate assistance of post-conviction counsel did not constitute presentation of evidence on the merits of a claim). Second,

---

[28]ECF No. 38 at 4. Both petitioner and respondents have presented argument relevant to the motion for discovery in other papers filed subsequent to the briefing cycle specifically on the motion.

[29]See text and notes, *supra*, at 5-6.

[30]ECF No. 29 at 2.

where a claim has been procedurally defaulted or otherwise is unexhausted in the state courts, the claim has not been adjudicated on the merits in a state-court proceeding in any event. *See, e.g., id.* (procedurally defaulted claim had not been adjudicated on the merits); *see also Gentry v. Sinclair*, 705 F.3d 884, 896 (9th Cir. 2013) (similar).[31]

Section 2254(e)(2)[32] also does not preclude consideration of evidence presented for the first time in federal court seeking to establish actual innocence under *Schlup*, for similar reasons. In *House v. Bell*, 547 U.S. 518 (2006), the habeas respondents argued, *inter alia*, that AEDPA replaced the *Schlup* actual-innocence rule with the stricter standard found in § 2254(e)(2)(B). The Supreme Court held that § 2254(e)(2)(B) was "inapplicable" because the provision addressed the "threshold for obtaining an evidentiary hearing on claims the petitioner failed to develop in state court" rather than a "petition seeking consideration of defaulted claims based on a showing of actual innocence." 547 U.S. at 539. *See also Dickens v. Ryan*, 740 F.3d 1302, (9th Cir. 2014)

---

[31]Respondents seek dismissal of Ground 1 as procedurally defaulted and Grounds 2(C), 2(D), 3, 4, and part of 2(F) as untimely due to a failure to relate back to timely claims. Respondents additionally challenge the exhaustion of Grounds 2(C) and 2(D) and part of 2(F) with regard to the allegedly untimely claims — as well as of parts of Grounds 2(A) and 2(B).

[32]Respondents refer to § 2254(e). However, subparagraph (e)(1) of the statute establishes a rebuttable presumption of correctness for state court factual findings, and its text does not establish any express limitation on the evidence that can be considered when a petitioner seeks to overcome the presumption by "clear and convincing evidence."

Subparagraph (e)(2) of §2254 provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(*en banc*) (when a petitioner seeks to establish cause to overcome a procedural default based on inadequate assistance of post-conviction counsel, "he is not asserting a 'claim' for relief as that term is used in § 2254(e)(2)"). It thus is clear that § 2254(e)(2) is inapplicable to an effort to demonstrate actual innocence under *Schlup* to overcome a procedural default or untimeliness bar.[33]

Respondents further posit:

> [Petitioner's] motion claims that the records allegedly in possession of the Clark County DA's Office contradict his claim that he was in prison in California during the time the crimes are alleged. Respondents question how these unnamed and unspecified records (if they even exist) would prove his "innocence" if they contradict [petitioner's] claims. If these records did exist, Respondents presume that they would have been introduced by the State (the Clark County District Attorney's Office) at trial in order to prove his guilt.

ECF No. 29 at 2 n.2.

The *Schlup* actual-innocence inquiry is fact-intensive, and the Court therefore must decide the issue only upon an adequate record. *See, e.g., Corzine v. Baker*, No. 14-15242 (9th Cir., Mar. 25, 2016) ("The Supreme Court has been unequivocal in its instruction that a habeas court must consider the entire record in a *Schlup* inquiry."); *Walker v. McDaniel*, No. 08-15628 (9th Cir., Oct. 29, 2012) (district court abused its

---

[33] Moreover, with respect to both *Pinholster* and § 2254(e)(2), it has not necessarily been established that evidence of the dates of petitioner's California incarceration was *not* before the state courts. It appears that, *inter alia*, a motion *in limine* specifically involving the evidence was litigated in the district court and that the issue was pursued thereafter before the Supreme Court of Nevada on direct appeal. Another motion *in limine* also was pursued that concerned the associated conviction. See text and notes, *supra*, at 5-6. Where evidence presented in federal court merely reconstructs facts or evidence clearly known to the state courts, *Pinholster* does not bar consideration of the evidence. *See, e.g., Jamerson v. Runnels*, 713 F.3d 1218, 1226 (9th Cir. 2013) (*Pinholster* did not bar federal court consideration of driver's license photographs to reconstruct the black-white racial composition of the jury venire, which was apparent to the state trial court during *voir dire*). A conclusion that the federal evidence merely reconstructs facts before the state court also tends to cut against a determination that a petitioner failed to develop the factual basis of a claim in state court for purposes of § 2254(e)(2). (As discussed in the text, *supra* **Error! Main Document Only.**at 13, there is no requirement that newly presented evidence be entirely outside the scope of the state court record in order to be "new" for purposes of *Schlup*, so long as it was not presented to the jury at trial. There thus is no tension between a conclusion that the reconstructed evidence was in the overall state court record and a conclusion that the evidence presented in federal court is "new" under *Schlup*.)

discretion in deciding *Schlup* issue without adequate record development). The Court accordingly cannot decide the issue based upon speculation or presumption as to what an adequately developed record might or might not show. The record material currently on file tends to establish, *inter alia*, that: (1) evidence reflecting the dates of petitioner's California incarceration potentially may be exculpatory on at the very least one of the offenses for which petitioner was convicted; (2) evidence of the dates of petitioner's incarceration was not introduced by the State at trial to prove his guilt and instead was excluded from evidence; and (3) the State affirmatively represented in the state post-conviction proceedings that it had evidence of the dates of petitioner's incarceration in its possession, which is consistent as well with the record of the district court proceedings prior to trial. Petitioner obviously refers to what the State said about the evidence not for the truth of the State's characterization as to what the evidence reflects but instead as tending to establish that the State has the materials that he seeks. Faced with such a record, the Court must permit further factual development to assure that its decision on the *Schlup* actual-innocence issue is based upon an adequate record.

Finally, respondents refer to their not having any materials other than state court records, and respondents argue that "[e]ven if Respondents possessed materials not in the state court record," petitioner is not entitled to discovery. ECF No. 29 at 2 & n.1. The Court trusts that respondents do not suggest that party discovery may not be sought in this habeas matter of materials that the State represented to the state courts that it has. The Court would look with disfavor upon any argument that respondents — who are defending the collateral challenge to the State's conviction for the real party in interest, the State of Nevada — are not obligated to respond to party discovery ordered by the Court as to materials that the State has stated that it possesses.[34] Even if such an

---

[34] *Cf. Johnny Ray Brown v. Brian Williams*, 2:10-cv-00407-PMP-GWF, at 11 (D. Nev., July 30, 2012) ("[T]he Court has, as it must, broad authority to fashion appropriate relief in a federal habeas matter. If state correctional officials are inclined to put obstacles in the way of court-ordered party discovery in a habeas matter based upon the meritless proposition that documents and information within the control of the state department of corrections are not subject to party discovery even though one of its wardens is named as a respondent, the Court will cut through that frivolous objection.").

1  objection were a viable one, the Court then simply could authorize joinder of and service
2  upon the district attorney as an additional party respondent to assure that all parties
3  required for the efficient administration of justice indisputably were fully and formally
4  before the court.[35] The Court accordingly trusts that respondents were not suggesting
5  that the materials sought are not subject to party discovery.[36]

6  Petitioner's motion for discovery therefore will be granted in the manner
7  consistent with the remaining provisions of this order. The Court will hold all remaining
8  motions by the parties — including petitioner's renewed motion for appointment of
9  counsel — under advisement pending the supplementation of the federal record
10 directed herein in connection with the motion for discovery.

**IV.   ADDITIONAL MATTERS**

Under LR IC 6-1, parties must refrain from including, or must partially redact where inclusion is necessary, *inter alia*, the names of minor children. Under the local rule, if the involvement of a minor child must be mentioned in a filing, only the initials of that child should be used.

This rule applies not only to references to C.A., but also to references to other children, such as her friends mentioned in various contexts in her testimony or otherwise in the state court proceedings.

The rule also continues to apply even after the then minor child has become an adult. The privacy interests of a child do not terminate as to incidents in which they were involved as a child merely because they since have become an adult. Nor does the

---

[35] *Cf.* Advisory Committee Notes to Rule 2(b) of the Rules Governing Section 2254 Cases ("[T]he judge may require or allow the petitioner to join an additional or different party as a respondent if to do so would serve the ends of justice."); *see also Armentero v. INS*, 340 F.3d 1058 (9th Cir. 2003), *opinion withdrawn on grant of en banc rehearing*, 382 F.3d 1153 (9th Cir. 2004), *appeal dismissed per fugitive disentitlement doctrine*, 412 F.3d 1088 (9th Cir. 2005)(the Ninth Circuit extensively discussed a "flexible, practical approach to designating appropriate respondents").

[36] Of course, if the materials sought — as represented by the prosecutor at the state post-conviction evidentiary hearing — belie petitioner's allegation that he was incarcerated at the time of one or more of the offenses, respondents perhaps would have an interest in making the materials of record in this matter.

17

potential for harm from disclosure end after the child becomes an adult. Indeed, it is not difficult to conceive of scenarios in which such public disclosure during the child's adult years may be quite harmful.

In his motion for leave to file a supplement to the petition and associated papers, petitioner refers repeatedly to C.A.'s name. He must not do so in his filings.

The Court will direct the Clerk to file the motion under seal as the most expedient manner of rectifying the *pro se* petitioner's noncompliance with the local rule.

## V. CONCLUSION

It is therefore ordered that petitioner's motion styled as a motion to compel (ECF no. 27), which the Court has construed as a motion for discovery, is granted to the extent consistent with the remaining provisions of this order.

It is further ordered, pursuant to both Habeas Rules 6(a) and 7(a), that, within thirty (30) days of entry of this order, respondents will file — and serve upon petitioner — a set of supplemental exhibits consisting of copies of:

(1) the defense motion *in limine* for filing of amended information, *i.e.,* the motion seeking to limit the information to only times when petitioner was not incarcerated; all briefing thereon filed in the state district court; and all attachments and exhibits filed with the motion and/or briefing;

(2) the defense motion *in limine* to prevent admission of uncharged acts and prior conviction; all briefing thereon filed in the state district court; and all attachments and exhibits filed with the motion and/or briefing; and

(3) any other non-privileged materials possessed by the State, including by counsel for the State of Nevada in the state criminal and state post-conviction proceedings, that directly or indirectly

///
///

reflect petitioner's dates of incarceration on his California conviction for lewd act upon a child and force of a lewd act upon a child.[37]

It is further ordered that, if respondents withhold any otherwise responsive materials pursuant to a claim of privilege, respondents must file a separate notice of withheld documents with a privilege log within the notice identifying the document(s) withheld and the privilege asserted sufficiently to permit an initial facial assessment of the claim of privilege.

It is further ordered that the Clerk refile ECF No. 32 under seal, with a notation that it is filed under seal by this order, while still including the description for the filing that currently is stated in the existing docket entry.

It is further ordered that counsel send the hard copies of the exhibits to the Reno Clerk's Office.

DATED THIS 10th day of November 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[37]The Court is directing both supplementation of the record and the response to the discovery in the one consolidated action step directed in the text. The Court is seeking to determine the appropriate action to be taken on the remaining pending motions at the earliest possible juncture in this action, which is approaching three years in age.

The State's opposition to the motion *in limine* for filing of amended information is filed as Exhibit 12. For ease of reference, the Court's preference is that another copy of that particular state court filing be included with the grouping of related exhibits filed with the supplemental exhibits.