1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DONALD STEVEN YAAG,

                    Petitioner,

   v.

RENEE BAKER, *et al.*,

                Respondents.

Case No. 3:14-cv-00295-MMD-WGC

ORDER

      This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Petitioner Donald Steven Yaag, a Nevada prisoner who is represented by counsel. Currently before the Court is Respondents' Motion to Dismiss (ECF No.[1] 72) ("Motion") Yaag's Second Amended Petition for Writ of Habeas Corpus (ECF No. 48). Yaag has opposed (ECF No. 75) the Motion, and Respondents have replied (ECF No. 76). For the reasons discussed below, the Motion is granted.

**I.    BACKGROUND**

    **A.    Yaag's Conviction and Sentence**

      Yaag challenges a 2009 conviction and sentence imposed by the Eighth Judicial District Court for Clark County ("state court"). *See State of Nevada v. Yaag*, Case No. C241992. In March 2008, he was charged by way of information with 21 criminal counts: 14 counts of sexual assault with a minor under the age of 14 and seven counts of lewdness with a child under the age of 14. (ECF No. 13-5.) None of the 21 counts were alleged to have occurred on a specified date or within a range of dates; instead, the offenses allegedly occurred over a three-year period from "on or between January 1, 2004, and December

---

      [1]"ECF No." refers to the document number generated by the Case Management / Electronic Case Filing system, which is displayed at the top of each page filed with the Court. **Error! Main Document Only.**All page citations in this order refer to the page number displayed in the ECF header, rather than any internal page numbering in the original document.

31, 2006." (ECF No. 13-5.)

### 1.   Yaag's Motion *In Limine*

As initially charged, each count referenced Yaag's prior California convictions for lewd act upon a child and force of a lewd act upon a child. (*Id.*) Defense counsel, Marty Hart,[2] filed a motion *in limine* arguing that the references to Yaag's prior convictions was inflammatory information that would violate his right to a fair trial if presented to the jury and the three-year span provided insufficient notice of the charges. (ECF No. 40-1.) Hart asked that the charging document be amended to strike the references to the prior convictions and narrow the timeframe. Prosecutors amended the information to remove the references to Yaag's prior convictions without a court order (ECF No. 13-10), but they opposed narrowing the three-year charged time period.

In February 2009, the state court heard oral argument on the timeframe issue prior to jury selection. (ECF No. 13-13 at 3-5.) Hart asserted that Yaag was incarcerated in California during part of the three-year period and he could not have committed the offenses while in custody. However, Hart recognized that if he brought in the fact of Yaag's incarceration at trial, the jury would learn the similar nature of the prior convictions. The prosecutor pointed out that time was not an essential element of the charged offenses under Nevada law and the parties agreed that Yaag's prior convictions would not become an issue unless he testified and made his character an issue. The state court denied the motion, and the trial proceeded on the three-year time period as charged.

### 2.   The Victim's Testimony

Yaag was charged with committing the offenses against C.A., the daughter of a woman he dated for several years beginning when C.A. was an infant. (ECF No. 13-4 at 9; ECF No. 13-20 at 27.) C.A. testified that she regarded Yaag as stepfather and he remained in contact with her family after he and C.A.'s mother no longer dated. (ECF No. 13-20 at 39, 42, 71.) Since C.A. was born in February 1993 (ECF No. 13-20 at 31), she was almost

---

[2]Hart represented Yaag both at trial and on direct appeal.

1    11-years old to almost 14-years old during the charged time period of 2004 to 2006.

2         In the trial evidence, certain counts corresponded to four discrete events when Yaag

3    visited Las Vegas from California and stayed at a particular location. (ECF No. 13-20 at

4    71; ECF No. 13-21 at 72.[3]) C.A. testified that the first incident—the Wild Wild West/Scandia

5    incident—occurred in 2004 when she was 11-years old, although she did not remember

6    the month or time of year. (ECF No. 13-20 at 42-44; ECF No. 13-21 at 54-55.) On redirect,

7    C.A. testified that her initial police statement and preliminary hearing testimony stated that

8    she was 11 or 12 when that incident occurred. (ECF No. 13-22 at 3.[4])

9         In closing, the prosecutor repeated C.A.'s testimony that she was 11-years old when

10   the first incident occurred. (ECF No. 13-25 at 10-11, 13-14, 16, 19, 22.)

11                    3.    The Jury Verdict, Judgement of Conviction, and Sentence

12        At the end of the four-day trial, the jury found Yaag guilty of nine sexual assault

13   counts. (ECF No. 13-28.) The state court entered a judgment of conviction on April 28,

14   2009, sentencing him to nine concurrent life sentences without the possibility of parole.

15   (ECF No. 13-30.) His prior convictions for lewd acts upon a child formed the basis for the

16   mandatory life sentences without parole. (ECF No. 13-29 at 3.)

17   **B.    Direct Appeal**

18        Yaag appealed his conviction. Among other issues, he argued that the amended

19   information failed to adequately specify the alleged dates of offenses and, at the very least,

20   the State should have eliminated the time period when he was in custody. (ECF Nos. 13-

21   32, 13-34.) The conviction was affirmed on April 8, 2010. (ECF No. 13-35.) As to the

22   specificity of the charged dates, the Nevada Supreme Court held that his claim lacked merit

23   because the State "was not required to allege an exact date and could give an approximate

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25        [3]The Court previously referred to these discrete episodes in the temporal order in
     which they occurred according to the trial testimony: (1) the Wild Wild West/Scandia
26   incident, (2) the Wild Wild West/Star Trek Experience incident, (3) the Adolfo's Home
     incident, and (4) the Mother's Home incident. (ECF No. 39 at 3-4.)

27        [4]C.A. spoke to a detective in January 2007 and testified at the preliminary hearing
28   in March 2008. (ECF No. 13-22 at 1-2; *see also* ECF No. 13-4 at 10-11.)

1   date," and C.A. "testified to multiple instances of lewdness and sexual assault between

2   January 1, 2004, and December 31, 2006." (*Id.* at 3.)

3        **C.**     **First Post-Conviction Proceedings**

4         Yaag filed a *pro se* state petition for writ of habeas corpus seeking post-conviction

5   relief on April 6, 2011 ("First State Petition"). (ECF No. 13-38; *see also* ECF Nos. 13-43,

6   13-45 (*pro se* supplements).) The state court appointed counsel, who filed a supplement

7   with additional claims—13 claims in total. (ECF Nos. 13-44, 13-47.) Yaag argued that

8   prosecutors committed misconduct by charging him during a timeframe they knew he was

9   incarcerated in California and thus could not have committed the offenses in Nevada, and

10   then eliciting testimony from C.A. to support that impossible timeframe. He alleged an

11   ineffective assistance of counsel ("IAC") claim based on Hart's failure to investigate the

12   California incarceration dates, and argued this constituted good cause to overcome the

13   procedural bar for failing to raise the prosecutorial misconduct claim on direct appeal.

14         Yaag received an evidentiary hearing before the state court. (ECF Nos. 13-51, 13-

15   52.) Hart testified that he discovered the dates Yaag was incarcerated in California and

16   thus filed the motion *in limine* to narrow the charged time period since it overlapped with

17   the dates Yaag was in custody. (ECF No. 13-51 at 12-14, 23-25.[5]) When that request was

18   denied, Hart decided not to introduce Yaag's incarceration to the jury:

> Q     … the allegation that acts were allegedly perpetrated upon the victim at a time that he was in custody, that would have gone to the credibility of the victim, would it not?
>
> A     Yes.
>
> Q     But you didn't get into that at trial?
>
> A     No.
>
> Q     And you're testifying the reason is you were concerned about the jury learning that he was in state prison in California?
>
> A     Not just state prison, but state prison in California for lewdness with a minor.

26         [5]Hart's testimony indicates he possessed a copy of Yaag's California judgment

27   during the underlying criminal case. (ECF No. 13-51 at 24.) An exhibit attached to the First State Petition supports his testimony. (ECF No. 13-38 at 14 (Yaag's abstract of judgment,

28   which displays a fax receipt by Hart's office in July 2008).)

1   (ECF No. 13-51 at 15.)

2       Following the evidentiary hearing, the First State Petition was denied. (ECF No. 13-

3   52 at 37-39; ECF No. 13-53.) The state court found that Yaag's prosecutorial misconduct

4   claim was waived and he did not show good cause to excuse the procedural bar. Applying

5   *Strickland v. Washington*, 466 U.S. 668 (1984), the state court further held that Hart

6   provided effective assistance and Yaag failed to demonstrate prejudice.

7       Yaag appealed.[6] (ECF Nos. 13-57, 13-59 ("First Post-Conviction Appeal").) The

8   Nevada Supreme Court affirmed the denial of the First State Petition. (ECF No. 13-60.) A

9   remittitur issued on June 6, 2014. (ECF No. 13-61.)

10      **D.    Federal Habeas Action**

11      On June 6, 2014, Yaag initiated this federal habeas corpus action. (ECF No. 1.) The

12  petition raised an IAC claim against Hart for a "failure to conduct discovery and pre-trial

13  investigation," alleging that Hart should have presented "[d]ocumentation available by clear

14  and exact dates" of his incarceration "between Dec. 19, 2002, to July 25, 2005" at the

15  preliminary hearing or in a pretrial habeas petition or motion to dismiss multiple counts.

16  (ECF No. 5 at 5 ("Original Petition").)

17      The Court denied Yaag's initial requests for appointed counsel, but granted leave to

18  amend, and directed Respondents to answer or otherwise respond to his First Amended

19  Petition (ECF No. 20). (ECF Nos. 4, 8, 18, 22.) Respondents moved to dismiss the First

20  Amended Petition as untimely and procedurally defaulted. (ECF No. 25.)

21      1.    <u>Supplemental Records for Yaag's Actual Innocence Claim</u>

22      In response to the dismissal motion, Yaag filed a Motion to Compel (ECF No. 27)

23  seeking materials to establish that his incarceration dates in California from December

24  2002 until July 2005. If the dates were established, he argued he could not have been in

25  Nevada during the time of any offense that purportedly occurred in 2004 while C.A. was

26  _____

27      [6]Post-conviction counsel withdrew from the case in December 2012 shortly after the
    evidentiary hearing and new counsel was appointed for the First Post-Conviction Appeal.
28  (ECF Nos. 13-56, 49-8).

11-years old. This would also establish that he was not in Nevada for more than half of the three-year time span alleged in the amended information. Such materials were necessary, Yaag asserted, to demonstrate that a failure to consider his habeas claims would result in a fundamental miscarriage of justice because he is actually innocent of one or more of the offenses of which he was convicted.

The Court construed his request as a motion for discovery pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases[7] and held that further factual development must be permitted to ensure that a decision on the actual innocence issue is based upon an adequate record. (ECF No. 39.) The Court thus ordered Respondents to supplement the record, and held under advisement both Respondents' dismissal motion and Yaag's renewed Motion for Appointed Counsel (ECF No. 35) pending supplementation.

Upon review of the supplemental records (ECF Nos. 40-1, 40-2, 40-3, 40-4), the Court found they potentially corroborated Yaag's actual innocence claim and the interests of justice required the appointment of counsel. (ECF No. 41.) The remaining motions, including the dismissal motion, were thus denied without prejudice. Once the Federal Public Defender entered a notice of appearance, the Court set a schedule for further proceedings and granted leave to further amend the petition. (ECF No. 43.)

2.    Yaag's Second Amended Petition and Supporting Exhibits

Yaag filed a counseled Second Amended Petition (ECF No. 48) in August 2017, alleging the following grounds for relief:

**Claim A**: Mr. Yaag was not given proper notice of the crimes charged against him in violation of the Fifth, Sixth, and Fourteenth Amendments.

**Claim B**: Mr. Yaag was denied his right to the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.

**1.** Trial counsel was deficient for failing to obtain and present evidence of the dates of Yaag's incarceration.

**2.** Trial counsel was deficient for failing to object to the prosecutor's false

---

[7]All references to a "Habeas Rule" or the "Habeas Rules" in this order identify the Rules Governing Section 2254 Cases in the United States District Courts.

representations, which constituted prosecutorial misconduct.

**Claim C**: Mr. Yaag was denied due process of law where the prosecutors knowingly presented and relied upon false evidence.

**Claim D**: Mr. Yaag is entitled to relief because he is actually innocent of the crimes charged and continued incarceration is unconstitutional.

Yaag also submitted evidence of his incarceration dates in California from December 2002 until July 2005.[8] The Incarceration Records reflect the following. He entered the California Institute for Men ("CIM"), a state prison, for a parole violation on December 20, 2002. (ECF No. 49-14 at 6 (showing he was detained pending revocation on 12/20/2002); ECF No. 49-11 at 5 (noting his presence at CIM pending parole revocation on 12/20/2002).) He remained at CIM until July 8, 2003, when he was transferred to the San Bernardino County Sheriff's custody on new charges for lewd acts upon a child. (ECF No. 49-11 at 5 (stating he was "Out to Court" on 7/8/2003); ECF No. 49-14 (indicating he was arrested or "booked" in San Bernardino County on 7/8/2003).) Two days later, Yaag was arraigned on the new case and held on $200,000 bail. (ECF No. 51 at 12-13.)

California court records show that Yaag remained in custody throughout all pretrial proceedings. (*Id.* at 3-12.) In January 2004, he entered a plea of no contest and was sentenced to three years in prison with credit for 401 "actual" days of time served. (*Id.* at 4-5.) He was remanded to the sheriff's custody for transfer to the California Department of Corrections. (*Id.* at 5.) The next month, Yaag was transferred to Wasco State Prison. (ECF No. 49-14 at 6 (stating he was released to state prison on 2/13/2004); ECF No. 49-12 at 4 (logging him as received at Wasco on 2/13/2004).) Yaag remained there until he was paroled on July 23, 2005. (*Id.* (changing his status to "paroled" on 7/23/2005); *see also* ECF No. 49-16 at 4–7 (various documents reflecting parole/release date).)

### 3.   Stay and Abeyance

Respondents moved to dismiss the Second Amended Petition and/or certain

---

[8]Respondents do not challenge the incarceration dates Yaag asserts in his Second Amended Petition, nor the authenticity of the documents he submitted to establish those dates. (ECF Nos. 49-11, 49-12, 49-14, 49-15, 49-16, 51.) For the reader's convenience, the Court will refer to these documents jointly as the "Incarceration Records."

grounds for relief as untimely, unexhausted, procedurally defaulted, or non-cognizable. (ECF No. 55.) Yaag responded and also requested a stay and abeyance pending the exhaustion of remedies in Nevada courts. (ECF Nos. 60, 61.) The Court granted his request and denied the dismissal motion without prejudice. (ECF No. 66.)

### E.    Second Post-Conviction Proceedings

In October 2017, Yaag filed a second state petition for writ of habeas corpus ("Second State Petition") raising the following claims:

> **Ground One**: Mr. Yaag was denied his right to the effective assistance of counsel as guaranteed by the Sixth Amendment.
>
> > **A**. Trial counsel was deficient for failing to obtain and present evidence of the dates of Yaag's incarceration.
> >
> > **B**. Trial counsel was deficient for failing to object to the prosecutor's false representations, which constituted prosecutorial misconduct.
>
> **Ground Two**: Mr. Yaag was denied due process of law where the prosecutors knowingly presented and relied upon false evidence.
>
> **Ground Three**: Mr. Yaag is entitled to relief because he is actually innocent of the crimes charged and continued incarceration is unconstitutional.[9]

(ECF No. 68-1.) He asserted that good cause existed to overcome Nevada's procedural bars based on new evidence of actual innocence, *i.e.*, the Incarceration Records. Yaag argued the Incarceration Records proved it was impossible for him to have sexually assaulted C.A. in Las Vegas in 2004 when she was 11-years old. (*Id.* at 10-13.)

The Second State Petition was denied as time-barred and successive. (ECF No. 68-8.) The state court found that Yaag's actual innocence claim failed to establish good cause to overcome Nevada's procedural bars. (*Id.* at 8.)

Yaag appealed, but the state court's decision was affirmed in June 2019. (ECF No. 68-21 ("Second Post-Conviction Appeal").) With regard to his actual innocence claim, the Nevada Court of Appeals stated:

---

[9]Grounds One, Two, and Three of the Second State Petition correspond with Claims B, C, and D of the federal Second Amended Petition. Claim A was not included in the Second State Petition.

1

2          Even assuming the incarceration records were new evidence, we conclude
           Yaag failed to demonstrate he was actually innocent. While the victim
3          testified she was 11-years old when the conduct for the one count occurred,
           testimony was given that the victim had told the police, and had testified at
4          the preliminary hearing, that she was 11 or 12-years old when the conduct
           occurred. Further, the State alleged the crime occurred between January 1,
5          2004 and December 31, 2006, during which time the victim was almost 11-
           years old to almost 14-years old. The victim testified with specificity regarding
6          other details of the crime, and while she may have been incorrect with regard
           to how old she was when the crime occurred, the details she testified to could
           still have led the· jury to convict Yaag. Therefore, Yaag failed to demonstrate
           no reasonable juror would have convicted him in light of new evidence.

7    (*Id.* at 3-4.)

8          **F.     Reopened Federal Habeas Action**

9          In October 2019, the Court granted Yaag's unopposed request to reopen this case,

10   and a schedule was set to complete briefing. (ECF Nos. 67, 69, 71.)

11         Respondents' current Motion repeats their previous request to dismiss the Second

12   Amended Petition and/or certain grounds for relief. (ECF No. 72.)

13   **II.   TIMELINESS AND PROCEDURAL DEFAULT**

14         The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-

15   year statute of limitations, *i.e.*, 365 days, for state prisoners to file a federal habeas petition.

16   *See* 28 U.S.C. § 2244(d)(1)(A). The AEDPA limitations period is tolled while a "properly

17   filed application" for post-conviction relief is pending before a state court. *Id.* § 2244(d)(2).

18   But a pending federal habeas petition does not statutorily toll the AEDPA deadline. *See*

19   *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

20         Federal courts are barred from considering a state prisoner's habeas claim if the

21   state courts denied his claim pursuant to an independent and adequate state procedural

22   rule. *See Edwards v. Carpenter*, 529 U.S. 446, 454-55 (2000). Nevada's one-year statute

23   of limitation for post-conviction petitions, NRS 34.726, and prohibition on second or

24   successive post-conviction petitions, NRS 34.810(2), are independent and adequate state

25   procedural rules as applied to non-capital cases. *See, e.g.*, *Williams v. Filson*, 908 F.3d

26   546, 580 (9th Cir. 2018); *Bargas v. Burns*, 179 F.3d 1207, 1211-14 (9th Cir. 1999).

27         Here, the parties do not dispute that Yaag's Original Petition was timely filed but the

28   Second Amended Petition was not, although he argues that Claim B(1) relates back and

1   should be deemed timely. By failing to oppose Respondents' timeliness arguments, Yaag

2   acknowledges that Claims A, B(2), and C are untimely.[10]

3         Respondents further argue that Claims B(1), B(2), C, and D—the claims denied by

4   the Nevada Court of Appeals in the Second Post-Conviction Appeal—are procedurally

5   barred. (ECF No. 72 at 9-10.) Yaag implicitly concedes such claims are now procedurally

6   barred. However, he asserts that any untimeliness or procedural default can be overcome

7   because newly presented evidence—the Incarceration Records—demonstrates that he is

8   actually innocent. (ECF No. 75 at 7-13.) Alternatively, he argues he can overcome the

9   procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012). (*Id*. at 13-15.)

10         At bottom, the briefing reveals that each of Yaag's claims is either untimely or

11   procedurally barred. Accordingly, he may not present his claims in this Court unless he first

12   demonstrates that the dismissal would produce a "miscarriage of justice," *i.e.*, a credible

13   claim of actual innocence, or that "cause and prejudice" excuses the default of his IAC

14   claims under *Martinez*.

15   **III.   ACTUAL INNOCENCE**

16        **A.   Legal Standards**

17         "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may

18   pass whether the impediment is a procedural bar [or] expiration of the statute of limitations."

19   *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means

20   actual factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333,

21   339 (1992). However, "where post-conviction evidence casts doubt on the conviction by

22   undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence,

23   that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise

24   barred claims." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal

25                       _____

26         [10]Although Respondents contend that the Second Amended Petition was not filed within AEDPA's one-year limitations period, they do not specifically argue that Claim D is

27   untimely. Instead they assert Claim D is procedurally barred and non-cognizable. (ECF No. 72 at 6-10.) As such, the Court views Yaag's concession regarding timeliness as

28   applying only to Claims A, B(2), and C.

1   quotation omitted). Nevertheless, the Supreme Court has emphasized that "tenable actual-

2   innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement

3   unless he persuades the district court that, in light of the new evidence, no juror, acting

4   reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*,

5   569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

6          "To be credible, [an actual innocence] claim requires petitioner to support his

7   allegations of constitutional error with *new reliable evidence*—whether it be exculpatory

8   scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that

9   was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). To be "new" for

10  purposes of an actual innocence claim, the evidence need only be "newly presented," *i.e.*,

11  reliable evidence "that was not presented at trial," as opposed to "newly discovered" and

12  thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). Actual

13  innocence review incorporates "*all evidence*," including (i) evidence alleged to have been

14  improperly admitted (but with due regard to its questionable reliability), (ii) evidence tenably

15  claimed to have been wrongfully excluded by the trial court, (iii) evidence the defense did

16  not present to the jury at trial, or (iv) evidence that became available only after the trial. *Id.*

17  (citing *Schlup*, 513 U.S. at 327-28).

18         Newly presented evidence may call into question the credibility of trial witnesses,

19  potentially requiring credibility assessments on federal habeas review. *See Schlup*, 513

20  U.S. at 330; *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). However, a *Schlup* claim

21  attempting to discredit prosecution witnesses provides less support for actual innocence

22  than affirmatively presenting new exculpatory evidence. *See, e.g.*, *Lee*, 653 F.3d at 943-

23  45 (holding that a reasonable juror may have rejected an expert's speculation and, even

24  assuming a police report constituted new evidence, jurors may still have convicted Lee

25  given all they heard at trial); *Sistrunk v. Armenakis*, 292 F.3d 669, 675-76 (9th Cir. 2002)

26  (en banc) (finding that excluded evidence had "some impeachment value" but was "far from

27  conclusive," and thus did not undermine confidence in the conviction).

28  ///

11

1

**B.    The Parties' Positions**

2      Yaag asserts he is actually innocent of the first sexual assault incident—the Wild

3  Wild West/Scandia incident—which purportedly occurred in 2004 when C.A. was 11-years

4  old according to her trial testimony. (ECF No. 75 at 7-13.) He argues the Incarceration

5  Records establish an "absolute alibi" for the first incident and call into doubt C.A.'s

6  credibility and memory of the three other charged incidents. The new Incarceration

7  Records, he asserts, show his actual innocence and overcomes all procedural bars,

8  clearing a path for the Court to address the merits of his claims.

9      Respondents contend that Yaag fails to meet the demanding actual innocence

10  standard. (ECF No. 76 at 4-5.) First, they point out that C.A. testified she was 11 or 12-

11  years old when the first incident occurred. (*Id.* at 4 (citing ECF No. 13-22 at 3).)

12  Respondents argue that C.A. testified she was not certain of when the first incident

13  occurred, and the jury heard evidence that it could have occurred in 2005. They further

14  note, as Yaag himself acknowledges, that the State was not required to prove specific

15  dates. Second, they assert Hart had the information regarding Yaag's incarceration dates

16  but chose not to introduce the information at trial because it would have opened the door

17  for prosecutors to present evidence of his prior convictions for lewd acts with a minor. To

18  prevent the jury from receiving such prejudicial information, Hart instead challenged C.A.

19  on cross-examination regarding the dates of the incidents. Because the Incarceration

20  Records do not demonstrate that no reasonable juror would have voted to find him guilty

21  beyond a reasonable doubt, Respondents maintain that Yaag's actual innocence claim

22  does not provide a basis to overcome his procedural defaults.

23      With the inclusion of the Incarceration Records, the Court must assess the likely

24  impact of this "new reliable evidence" on reasonable jurors in light of the complete record.

25  *House*, 547 U.S. at 538; *Schlup*, 513 U.S. at 324.

26

**C.    Yaag Fails to Meet the Demanding *Schlup* Standard**

27      The Court finds that Yaag has not made a convincing showing of actual innocence

28  to overcome the procedural default. Although the Incarceration Records indicate he could

1   not have committed the charged offenses prior to his parole in July 2005, Yaag provides

2   no reason why the four charged incidents could not have occurred between July 2005 and

3   December 2006. Thus, the Incarceration Records have "some impeachment value" but are

4   "far from conclusive." *See Sistrunk*, 292 F.3d at 676. Since time was not an essential

5   element of the charged offenses under Nevada law, and Yaag does not explain why he

6   could not have committed the offenses after his release on parole, the Court cannot

7   conclude that the Incarceration Records constitute evidence of innocence so strong as to

8   undermine confidence in his conviction.

9           As Respondents point out, C.A. testified that her initial police statement and

10  preliminary hearing testimony stated she was 11 or 12 when the Wild Wild West/Scandia

11  incident occurred. (ECF No. 13-22 at 3.) She did not remember the month or time of year

12  of that incident (ECF No. 13-20 at 43; ECF No. 13-21 at 54-55); however, she recalled

13  many specific details of the sexual assault. For example, C.A. provided extensive details,

14  including what she and Yaag had done earlier in the day, the positions she and Yaag were

15  in when he assaulted her, what kind of clothes she and Yaag were wearing when he

16  assaulted her, the layout of the hotel room, and what she and Yaag did after he finished

17  assaulting her. (ECF No. 13-20 at 42-51; ECF No. 13-21 at 54-62.) Given the considerable

18  details in C.A.'s testimony as to the Wild Wild West/Scandia incident, Yaag's Incarceration

19  Records would not make it "more likely than not that no reasonable juror viewing the record

20  as a whole would lack reasonable doubt" of his guilt. *House*, 547 U.S. at 554.

21          Furthermore, the Incarcerations Records plainly include information regarding

22  Yaag's prior convictions for lewd acts with a minor. The Court must include this information

23  in its analysis because it is required to consider "*all the evidence*, old and new, incriminating

24  and exculpatory, whether admissible at trial or not." *Lee*, 653 F.3d at 938 (emphasis

25  added). Information regarding prior convictions is highly prejudicial to Yaag and likely to

26  bolster C.A.'s testimony—not impeach her credibility. Trial counsel Hart recognized the

27  prejudicial nature of Yaag's lewdness convictions and successfully moved to keep such

28  inflammatory information from the jury. The reason for this is obvious: evidence of Yaag's

1    lewdness convictions could have led jurors to believe he was guilty of the similar charges

2    in Nevada. Based on the complete record, Yaag has not made a credible showing that no

3    reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513

4    U.S. at 324-27. Yaag's actual innocence claim therefore fails.

5         Because he has not overcome the procedural default or untimeliness with his actual

6    innocence claim, the Court now examines whether Yaag has shown cause and prejudice

7    under *Martinez* for his trial-level IAC claims.

8    **IV.    CAUSE AND PREJUDICE UNDER THE *MARTINEZ* EXCEPTION**

9         **A.    Legal Standards**

10        "Generally, post-conviction counsel's ineffectiveness does not qualify as cause to

11   excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing

12   *Coleman v. Thompson*, 501 U.S. 722, 754-55 (1991)). However, in *Martinez*, the Supreme

13   Court created a narrow exception to the general rule that errors of post-conviction counsel

14   cannot provide cause for a procedural default. *See* 566 U.S. at 16-17. "Under *Martinez*,

15   the procedural default of a substantial claim of ineffective assistance of trial counsel is

16   excused, if state law requires that all claims be brought in the initial collateral review

17   proceeding … and if in that proceeding there was no counsel or counsel was ineffective."

18   *Id.* (citing *Martinez*, 566 U.S. at 17). But *Martinez* cannot excuse the procedural default of

19   a substantive claim of trial-court error, appellate-level IAC claims, or "attorney errors in

20   other kinds of proceedings, including appeals from initial-review collateral proceedings,

21   second or successive collateral proceedings, and petitions for discretionary review in a

22   State's appellate courts." 566 U.S. at 16-7; *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

23        To establish cause and prejudice to excuse the procedural default of a trial-level

24   IAC claim under *Martinez*, a petitioner must show that:

25           (1) post-conviction counsel performed deficiently; (2) there was a reasonable
             probability that, absent the deficient performance, the result of the post-
26           conviction proceedings would have been different, and (3) the underlying
             ineffective-assistance-of-trial-counsel claim is a substantial one, which is to
27           say that the prisoner must demonstrate that the claim has some merit.

28   *Ramirez*, 937 F.3d at 1242 (internal quotation omitted). The first and second "cause"

prongs of the *Martinez* test are derived from *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 1241. Notably, the court's determination of the second prong—whether there was a reasonable probability that the result of the post-conviction proceedings would be different—"is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* (quoting *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) ("The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different."), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir. 2015) (en banc)). The third "prejudice" prong directs the court to assess the merits of the underlying ineffective-assistance-of-trial-counsel claim. *Ramirez*, 937 F.3d at 1241. A procedural default will not be excused if the underlying IAC claim "is insubstantial," *i.e.*, it lacks merit or is "wholly without factual support." *Id.* (quoting *Martinez*, 566 U.S. at 14-16).

The two-element *Strickland* test for IAC claims requires a petitioner to show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "any such deficiency was 'prejudicial to the defense'." *Garza v. Idaho*, 139 S. Ct. 738, 743-44 (2019) (quoting *Strickland*, 466 U.S. at 687-88, 692). The Court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To establish prejudice, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. It is not enough for the petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

## B.    Claim B(1)

### 1.    The Parties' Positions

Claim B(1) alleges that Hart was deficient for failing to obtain and present evidence of Yaag's incarceration dates in California. (ECF No. 48 at 17-20.) Yaag argues that

*Martinez* supplies cause to overcome the default of Claim B(1) because post-conviction counsel, Patrick McDonald, ineffectively failed to obtain and present Yaag's Incarceration Records—the same evidence that Hart failed to investigate and present. (ECF No. 75 at 14.) Yaag contends that McDonald could not demonstrate Hart's deficient performance without doing the investigation and presenting the evidence himself. As a result, Yaag argues this claim is meritorious and meets the *Martinez* test.

Respondents assert that this argument lack merit because McDonald's performance was not deficient, and the underlying IAC claim is not substantial. (ECF No. 76 at 6-7.) First, they note that McDonald investigated Hart's knowledge of the Incarceration Records. Hart testified during the evidentiary hearing that he chose not to introduce that information because it would have opened the door for prosecutors to present evidence of Yaag's prior convictions and, instead, Hart challenged C.A.'s memory on cross-examination. (ECF No. 13-51 at 24-25, 28, 43.) Second, Respondents contend that the underlying IAC claims against Hart lack merit because he was aware of the Incarceration Records and chose to avoid the jury learning of Yaag's prior convictions.

## 2.   *Martinez* does not apply to Claim B(1)

Claim B(1) fails under *Martinez* because the underlying IAC claim lacks merit. Applying *Strickland* to the underlying IAC claim—the third "prejudice" prong of the *Martinez* test, it is clear that Hart made a reasonable strategy decision not to present inflammatory information regarding Yaag's prior convictions to the jury and Yaag was not prejudiced by Hart's performance. Because time was not an essential element of the charged offenses under Nevada law, prosecutors were not required to prove exact dates. Thus, even if Hart had obtained the Incarceration Records and presented them at trial, C.A.'s testimony still could have led the jury to convict Yaag for committing the offenses *after* he was paroled. (*See* Section III.C, *supra*.) The impeachment value of the Incarceration Records was limited at best because jurors would have learned not only of Yaag's incarceration dates, but also of the nature of the underlying convictions for lewd acts with a minor. Given the similarity between the California convictions and the Nevada charges, Yaag would have

1    faced extreme prejudice and jeopardized his right to a fair trial, which is the reason Hart

2    filed a motion *in limine* seeking to strike references to Yaag's prior convictions and narrow

3    the charged timeframe. (ECF No. 40-1; ECF No. 13-13 at 3-5; ECF No. 13-51 at 12-15,

4    23-25.) In sum, Yaag cannot demonstrate deficient performance or prejudice under

5    *Strickland* based on Hart's failure to obtain the Incarceration Records.

6          Because his underlying IAC claim fails under *Strickland*, Yaag cannot meet the

7    second prong of the *Martinez* test, which requires a petitioner to show a reasonable

8    probability that the result of the post-conviction proceedings would have been different

9    absent post-conviction counsel's deficient performance. *See Ramirez*, 937 F.3d at 1242.

10   The Ninth Circuit has explained that "there could not be a reasonable probability that the

11   result of post-conviction proceedings would have been different" where the underlying IAC

12   claim lacks merit. *See Clabourne*, 745 F.3d at 377.

13         All three prongs of the *Martinez* test must be satisfied to overcome a procedural

14   default. Because Yaag has failed to do so for Claim B(1), he does not show cause and

15   prejudice to excuse the default of this claim. Claim B(1) will therefore be dismissed.

16         **C.    Claim B(2)**

17               1.    The Parties' Positions

18         Claim B(2) alleges that Hart was deficient for failing to object to the prosecutor's

19   false representations, as such representations constituted prosecutorial misconduct

20   because the State cannot argue what it knows to be false. (ECF No. 48 at 20-25.)

21   Nevertheless, the prosecutor repeatedly argued to the jury that Yaag sexually assaulted

22   C.A. was when she was just 11-years old. (*Id.*)

23         Yaag asserts that *Martinez* excuses the default of Claim B(2) because McDonald

24   ineffectively failed to raise the proper claim during the First Post-Conviction Proceeding.

25   (ECF No. 75 at 14-15.) According to Yaag, the prosecutor acknowledged during the

26   evidentiary hearing that she was aware of his incarceration dates before trial, and

27   McDonald was aware of that fact because he raised a substantive claim of prosecutorial

28   misconduct for presenting perjured testimony at trial. However, that claim was dismissed

as procedurally barred because it should have been raised on direct appeal. To raise a meritorious claim for post-conviction relief, Yaag argues that McDonald should have alleged an IAC claim for Hart's failure to object to the prosecutorial misconduct.

Respondents contend that Yaag's *Martinez* argument regarding Claim B(2) fails because, similar to Claim B(1), McDonald's performance was not deficient and the underlying IAC claim against Hart lacks merit. (ECF No. 76 at 6-7.)

### 2.   *Martinez* does not apply to Claim B(2)

Claim B(2) also fails under *Martinez*. The Court finds that Yaag has not met the first and second "cause" prongs of the *Martinez* test. Yaag contends that McDonald performed deficiently because he did not pursue an IAC claim for Hart's failure to object to prosecutorial misconduct. However, McDonald brought a very similar IAC claim based on Hart's failure to object to perjured, false, or inaccurate testimony. (ECF No. 13-47 at 31.) Although Hart did not use the term "prosecutorial misconduct" in this IAC claim, the crux of the allegations are the same as Claim B(2): prosecutors knew Yaag could not have sexually assaulted C.A. was when she was 11-years old but repeatedly emphasized that portion of C.A.'s testimony to the jury. Since these IAC claims are equivalent, Yaag has not shown that McDonald's performance was deficient.

Furthermore, Yaag has not shown prejudice based on McDonald's differing terminology for the equivalent IAC claim. After McDonald's withdrawal, Valencia reorganized Yaag's IAC claim in the First Post-Conviction Appeal. (ECF No. 13-57 at 28.) Valencia alleged that Hart "fail[ed] to challenge the prosecutorial misconduct," which was described as (1) "threatening to poison the jury by revealing to the jury details of Yaag's incarceration, especially why he was incarcerated," and (2) "emphasizing and relying on false testimony to gain a conviction." (*Id.*) Valencia argued, "Hart stood by while the State emphasized that the abuse took place when C.A. was 11 years old, an impossibility." (*Id.*; *see also* ECF No. 13-59 at 31.) The Nevada Supreme Court declined to address the first theory of improper threats because Yaag failed to raise that argument below, but denied on the merits the second theory that Hart "was ineffective for failing to challenge

prosecutorial misconduct when the State repeatedly emphasized and relied on false testimony, specifically that the victim was 11 years old when the abuse began in Nevada, in order to obtain a conviction." (ECF No. 13-60 at 7-8.) The decision states that Yaag failed to "demonstrate deficiency or prejudice" because he did not show Hart "was objectively unreasonable for failing to challenge the State's conduct or that there was a reasonable probability of a different outcome at trial had counsel challenged the conduct." (*Id.* at 8.)

The fact that the Nevada Supreme Court addressed Yaag's second IAC theory on its merits strengthens this Court's conclusion that it was sufficiently similar to the IAC claim McDonald raised below, which is the equivalent of Claim B(2), particularly because the Nevada Supreme Court declined to address Yaag's first theory of prosecutor threats. Because McDonald's performed effectively by raising the very IAC claim Yaag mistakenly argues he did not—the premise of his *Martinez* argument fails.

In addition, based on the evidence at trial supporting Yaag's conviction (*see* Section III.C, *supra*), the Court finds that the underlying IAC claim cannot meet *Strickland*'s requirements of deficient performance and prejudice to satisfy the third "prejudice" prong of the *Martinez* test. Similar to the analysis of Claim B(1), Hart made a reasonable strategic decision not to object to the prosecutor's references to C.A.'s testimony about the first sexual assault occurring when C.A. was 11-years old. Hart recognized that time was not an essential element of the charged offenses and the prosecutors were not required to prove exact dates. Even if Hart had raised an objection, the state court ruled in his favor, and the jury was told, consistent with C.A.'s testimony, that C.A. may have been 12-years old at the time of the first offense, there was sufficient evidence for the jury to convict Yaag. As such, he has not demonstrated deficient performance or prejudice based on the underlying IAC claim.

In sum, Yaag has not satisfied any of the *Martinez* test's three prongs to overcome a procedural default. Because he failed to do so, he does not show cause and prejudice to excuse the default of Claim B(2), and the claim will thus be dismissed.

///

1    **V.   CERTIFICATE OF APPEALABILITY**

2          The standard for the issuance of a certificate of appealability requires a "substantial

3 showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court

4 has interpreted § 2253(c) as follows: "Where a district court has rejected the constitutional

5 claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The

6 petitioner must demonstrate that reasonable jurists would find the district court's

7 assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

8 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying

9 this standard, the Court finds that a certificate of appealability is unwarranted in this case.

10 The Court will therefore deny Yaag a certificate of appealability.

11    **VI.   CONCLUSION**

12          In accordance with the foregoing, it is therefore ordered that Respondents' Motion

13 to Dismiss (ECF No. 72) is granted as follows: Claims A, B(2), and C are dismissed with

14 prejudice as untimely, and Claims B(1), B(2), C, and D are dismissed with prejudice as

15 procedurally defaulted.

16          It further is ordered that a certificate of appealability is denied, as reasonable jurists

17 would not find the district court's dismissal of the federal petition to be debatable or wrong,

18 for the reasons discussed herein.

19          The Clerk of Court is instructed to enter final judgment accordingly, in favor of

20 Respondents and against Yaag, dismissing this action with prejudice, and close this case.

21          DATED THIS 2nd day of October 2020.

22

23                                   _____

24                                  MIRANDA M. DU
                                 CHIEF UNITED STATES DISTRICT JUDGE

25

26

27

28